IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-00256-GPG

PETER JOHN ARENDAS,

    Plaintiff,

v.

MESA COUNTY SHERIFF MATT LEWIS,
SGT. ROUNDTREE, M.C.S.D.,
S/D CHAMBERS, M.C.S.D.,
S/D KEIFER, M.C.S.D.,
S/D ERKMAN, M.C.S.D.,
~~S/D HEMPHILL, M.C.S.D.,~~
~~SGT. TATE, M.C.S.D.,~~
~~SGT. HODSON, M.C.S.D.,~~
~~S/D #2469 aka JOHN OR JANE DOE, M.C.S.D.,~~
~~S/D WESTERMIRE, M.C.S.D.,~~
~~S/D WILTGEN, M.C.S.D.,~~
~~SGT. MONTEZ, M.C.S.D.,~~
~~A. MOSLEY, Utah D.O.C.,~~
~~R. CHRISTENSEN, Utah D.O.C.,~~
~~STATE OF UTAH, Operations Director of Utah State Prison, John or Jane Doe, and~~
~~ROLLIN COOK, Utah Dept. Of Corrections Commissioner,~~

    Defendants.

**RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS**

This matter comes before the Court on the following motion: Defendants'(collectively), motion to dismiss (ECF # 72),[1] Plaintiff's responses (ECFs # 76, 79, & 81) (a number of other filings from Plaintiff could loosely be construed as responses and all have been considered by the Court) and Defendants' reply (ECF #90) This motion has been referred to this Magistrate Judge for recommendation. (ECF #86).[2] The Court has reviewed the pending motion, responses, reply and any attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument is not necessary for resolution of these matters. This Magistrate Judge recommends that the motion to dismiss be GRANTED.

Jurisdiction and Venue

Jurisdiction and venue are established for the single claim which was drawn in this action.

*Pro se* Proceedings

Plaintiff now proceeds *pro se*. The court must construe the pleading(s) liberally because Mr. Arendas is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court should not be an advocate for a *pro se* litigant. *Id.* at 1110.

---

[1] "(ECF #72)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Procedural Summary

Plaintiff's amended complaint (ECF # 36) included several claims. Only claim one, and that only against limited Defendants (*see* ~~stricken~~ Defendants above) was ultimately drawn. The remaining claims were dismissed, claim two for being legally frivolous and claim three for being legally frivolous. The surviving claim one, titled "offending my religious practices" (ECF # 36, p. 11) was construed as a claim for alleged violations of Plaintiff's First Amendment right to freely exercise his religion under 42 U.S.C. § 1983 (ECF #40, p.3). Upon further review, and keeping in mind the liberal construction requirements for a *pro se* pleading, the Court has determined to also view this as a claim under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) 42 U.S.C. §§ 2000cc-1. Essentially, claim one will be reviewed as both a free exercise claim and as a RLUIPA claim.

Factual Summary

Plaintiff is an inmate in the Mesa County Detention Facility. Plaintiff is required to wear an identification wrist band and is not allowed to remove said wrist band. ECF #36, p.11, para. 1. The wrist band is not medically related. *Id*. Plaintiff has been required to wear the wrist band since 10/23/15. *Id.* Plaintiff has been sanctioned and/or lost privileges for removing the wrist band. *Id*. at pp. 11-12, paras. 2-4. The wearing of the wrist band violates Plaintiff's Roman Catholic observances in that he must pray without "have[ing] items affixed to [his] body that did not come out of [his] mothers (sic) womb." *Id*. at pp. 11-12, paras. 1 & 5. Plaintiff seeks injunctory (sic) relief, the ability to remove the wrist band in his cell during religious observance

(perhaps also while possessing an ID card) and $1,000,000.00 for pain, suffering and discrimination. *Id*. at p.23.

Plaintiff's specific statements regarding the wristband in his amended complaint, as they relate to religion, are as follows:

> My religious doctrine and practices I follow do not permit me to wear an unremovable item from my body that is not medically related. This also offends my prayer as a Roman Catholic. (ECF #36, p. 11, para. 1).
>
> The jail policy [] violates my religious Roman Catholic observances. . . . The jail policy has no allowance for my Roman Catholic observance that I not have items affixed to my body that did not come out of my mothers womb. (ECF #36, p. 12, para. 5) (sic).
>
> I am requesting <u>injunctory relief</u> and a court order permitting me to remove the I.D. wristband in my cell. The wrist band has adjustable notches to affix the set screw in a more loose fashion, so I can screw in a more loose fashion, so I can slide it off in my cell during religious observance daily. (ECF #36, p. 23) (sic).

Standard of Review

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Although allegations of fact are accepted as true, legal conclusions are not. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Accordingly, the Court disregards conclusory statements and looks only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik*, 671 F.3d at 1190-91.

Where the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted). "The nature and specificity of the allegations required to state a plausible claim will vary based on context . . . [and] requires the reviewing court to draw on its judicial experience and common sense." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir. 2011).

RLUIPA and §1983

Plaintiff entitled his first cause of action "offending my religious practices." (ECF # 36, p. 11). When this matter was drawn, the cause of action was liberally construed as a §1983 claim. The Court will analyze this claim from a RLUIPA perspective given the significantly more "capacious" protection provided for religious liberty under that statute. *See Holt v. Hobbs*, 135 S.Ct. 853, 860-62 (2015) (discussing the effective repudiation of the prior analysis engaged in for free exercise claims in favor of the broader protections set forth in RLUIPA); *see also Hammons v. Saffle*, 348 F.3d 1250 (10th Cir. 2003) (remanding an action construed as a free exercise claim for determination as to whether a RLUIPA framework should have been applied).

§1983 Free Exercise Claim

Prisoners are subject to the denial of some rights due to the underlying fact that they are incarcerated in a penal system. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Ben-Levi v. Brown*, 136 S.Ct. 930,

932 (2016) (citations removed).   In this case, requiring the wearing of an ID bracelet is rationally related to the legitimate penalogical interest of being able to quickly and accurately identify those inmates in the facility.

Defendant argues that the defense of qualified immunity would shield the individual Defendants to this action. Government officials have immunity from civil liability when they are performing discretionary functions and when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982). When looking at qualified immunity from a motion to dismiss context, a court must determine (1) whether a plaintiff has alleged facts supporting a violation of a constitutional right and (2) whether the right was clearly established at the time of defendant's conduct. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011). A court has the "sound discretion" to determine which of the two prongs set forth above to address first. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2005).

I choose to begin the analysis at step 2, whether the right was clearly established. I must determine whether the right was clearly established and whether it would be clear to a reasonable officer that their conduct would be unlawful. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). A preliminary issue is how to define the right we are discussing. An official may, in some cases, be on notice that their conduct violates established law perhaps even in a discrete circumstance. *See Hope v. Pelzer*, 122 S.Ct. 2508, 2516 (2002). However, it is generally true that a right needs to be established with some particularity so that it has some clarity for the official exercising their duties. *See Reichle v. Howards*, 132 S.Ct. 2088, 2094 (2012). In this action, it would be far too broad to define the right as the exercise of religion while incarcerated and leave it at that. That lack of specificity would unreasonably place at risk officers for almost

any potential act they might perform, were that act to be later claimed as a right's violation. I characterize the right as follows: would a reasonable officer known that their specific action (enforcing a penal regulation) impinged on an inmate's right to free exercise of religion. *See Stewart v. Beach*, 701 F.3d 1322 (10th Cir. 2012). In reviewing the penal regulation, it is appropriate to rely on factual similarities because of the need for officers to have reasonable warning if their conduct was libelous. *See Id.* at 1331.

Here, the conduct was requiring Plaintiff to wear an ID bracelet. I find no case law, either within or outside the 10th Circuit, to indicate a clearly defined right having to do with the manner in which a penal institution identifies inmates for security purposes. Plaintiff has identified no precedent on which I can rely. For the law to be "clearly established [as it must be for a right to be identified], there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Id.* (citation removed). Defendants in this action were not given, by the courts, clear and fair warning that their conduct in requiring Plaintiff to wear an ID bracelet would be libelous as a violation of his First Amendment right to pursue and exercise his religion.

I cannot say that Defendants were on any sort of notice that their enforcement of the detention facility ID bracelet requirement violated a clearly established right. Nor can I say that Defendants' conduct was objectively unreasonable. *See Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982). Thus, Defendants are entitled to qualified immunity and I recommend that the motion to dismiss as it applies to the free exercise claim be GRANTED.

RLUIPA

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-- **(1)** is in furtherance of a compelling governmental interest; and **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1(a). As a threshold matter, a prisoner's request for accommodation must be <u>sincerely</u> based on a religious belief and not some other motivation. *Burwell v. Hobby Lobby Stores, Inc.,* 134 S.Ct. 2751, 2774 n. 28 (2014) (emphasis added). Plaintiff has the initial burden of showing that he has a sincere religious belief. *Holt supra* at 862.

> [A]t least one feature of the statute's "religiosity" requirement often proves relatively unintrusive in its application and not infrequently dispositive: the question of sincere belief. RLUIPA does not offer refuge to canny operators who seek through subterfuge to avoid laws they'd prefer to ignore. Like those who set up "churches" as cover for illegal drug distribution operations. Or those who, facing the difficult realities of prison life, are tempted to seek special dispensations through fraudulent assertions of faith. But in suggesting we may ask whether a claimant truly holds a religious belief isn't to suggest we may decide whether the claimant's religious belief is true. . . . [O]ur task . . . [is] limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court - whether he actually holds the beliefs he claims to hold – a comparatively familiar task for secular courts that are regularly called on to make credibility assessments – and an important task, too, for ensuring the integrity of any judicial proceeding.

*Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014); *see also Ochs v. Thacker*, 90 F.3d 293, 296 (8th Cir. 1996) (RFRA's legislative history urges courts to discern false claims that may be attempts to disrupt prison life and/or gain privileges, e.g., religious preferences regarding timing of meals, numbers of showers, television programs, "or most any other aspect of prison life").

This matter is at the 12(b) stage. Thus, it is incumbent upon the Court not to question the truthfulness of Plaintiff's factual allegations (as I must assume they are true) but to instead determine if sufficient factual allegations have been made to plausibly state a claim upon which relief may be granted. The issue at this interesting intersection of plausibility, from a Rule 12(b) perspective, and sincerity, from a RLUIPA perspective, is how to make that determination. This determination must be made keeping in mind that I may not judge the significance of the particular belief in question (to either Plaintiff or his professed religion) nor may I judge the truthfulness of his factual assertions, as I must take them as true. How then can I determine if this claim has been "nudged" across the line from conceivable to plausible? While not questioning the truthfulness of factual assertions or the underpinnings of the religious belief, I must determine if Plaintiff's statements are sufficient to state a sincere religious belief and nothing more.

To be plausibly sincere, there must be some hallmarks of that sincerity. Plaintiff's claim is devoid of any assertions or hallmarks that would compel the Court to determine that they bear such assurances of sincerity. In fact, under these circumstances the targeted nature of the claim, which appears to be a cleverly faceted attempt to only avoid wearing an identity bracelet but which is not aimed at other requirements such as his jail uniform, is in no way supported by sufficient statements which state a sincere religious belief. Plaintiff provides no information in his complaint regarding how praying while wearing a wrist band may be any different from praying while clothed in a required jail uniform or while wearing a medical device, neither of which would not have originated from his "mother's womb." Harkening back to *Yellowbear*, "RLUIPA does not offer refuge to canny operators who seek through subterfuge to avoid laws they'd prefer to ignore." *Id*. at 54.

It is not the province of the Court to question either the truthfulness of the claim or the sincerity of the belief.  As it is within our bailiwick to be the gate keepers of implausible claims, I must, even in this tightrope of an area, determine whether enough sincerity has been professed to be plausible.  *See Cutter v. Wilkinson*,  125 S.Ct. 2113, 2124, n. 13 (2005) (The truth of a belief is not open to question'; rather, the question is whether the objector's beliefs are truly held) (citations and internal quotations removed).

At this stage, in order to proceed, Plaintiff bears the burden of plausibly setting forth facts to show that he has a sincere religious belief.  I must, as in any other action, apply the Rule 12(b) standards incumbent at this stage.  Doing so, I find that Plaintiff has failed in this burden, his burden, and not plausibly stated a claim upon which relief may be granted.  For that reason, I respectfully recommend that the motion to dismiss be GRANTED.


Dated at Grand Junction, Colorado, this November 29, 2016.


_____
Gordon P. Gallagher
United States Magistrate Judge